UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,
As Broadcast Licensee of the July 16, 2005
Hopkins/Taylor Program,

                            Plaintiff,

    -against-

CARLOS M. GUERRA, Individually and d/b/a
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA, and
CEVICHERIA LOS GUERRA RESTAURANT
a/k/a CEVICHERIA LOS GUERRA ,

                            Defendants.
----------------------------------------------------------------X

REPORT AND
RECOMMENDATION
06 CV 164 (CPS) (RML)

LEVY, United States Magistrate Judge:

        By order dated May 2, 2006, the Honorable Charles P. Sifton, United States District Judge, referred plaintiff's motion for entry of a default judgment to me to conduct an inquest and issue a Report and Recommendation. For the reasons stated below, I respectfully recommend that the default judgment be granted and that plaintiff be awarded $5,000 in damages and $1,318.75 in attorney's fees and costs.

## BACKGROUND AND FACTS

        Plaintiff J & J Sports Productions, Inc. ("plaintiff" or "J & J Sports") brought this action in January 2006, alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (1996). Plaintiff alleges that the defendants procured or received pay-per-view cable television services without authorization or consent. After the defendants failed to appear or answer in this action, plaintiff moved for the entry of a default judgment. On May 2, 2006, Judge Sifton referred the issues of jurisdiction, damages, non-monetary relief and

attorney's fees to me for Report and Recommendation. By order dated May 10, 2006, I noted that plaintiff had filed a submission in support of its claims for damages and attorney's fees, and I directed defendants Carlos M. Guerra and Cevicheria Los Guerra Restaurant ("defendants") to serve and file any opposition on or before June 30, 2006. Defendants did not file any such document, and the court has received no communication from them.

Affidavits of service indicate that Carlos M. Guerra and Cevicheria Los Guerra Restaurant were served with copies of the summons and complaint. (<u>See</u> Affidavits of Sparkle Griffith, sworn to Feb. 15, 2006.) On April 25, 2006, the Clerk of the Court noted these defendants' default. (<u>See</u> Clerk's Notation of Default (Apr. 25, 2006).) Having reviewed the papers submitted by plaintiff in support of its application, I respectfully recommend that plaintiff's request for a default judgment be granted.

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. <u>Cotton v. Slone</u>, 4 F.3d 176, 181 (2d Cir. 1993); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Time Warner Cable of New York City v. Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d 485, 487 (S.D.N.Y. 1999); <u>Time Warner Cable of New York City v. Olmo</u>, 977 F. Supp. 585, 587 (E.D.N.Y. 1997). Plaintiff's allegations with respect to the defendants are as follows:

Plaintiff is a California corporation that owns the commercial distribution rights to the July 16, 2005 Hopkins/Taylor pay-per-view boxing event ("the Event"). (Complaint ("Compl.") ¶ 15 (Jan. 12, 2006).) The Event was broadcast by closed circuit television or transmitted by encrypted satellite signal. (Plaintiff's Memorandum of Law ("Pl.'s Mem."), at 2 (Apr. 21, 2006).) For a fee, a customer could receive an unscrambled signal and display the

Event to its patrons. (Id.) Plaintiff does not list the minimum licensing fee for commercial establishments in its complaint, its legal memorandum, or its affidavit.

Defendant Cevicheria Los Guerra Restaurant ("the Restaurant") is a business located at 3220 Fulton Street, Brooklyn, New York. (Compl. ¶ 15.) Defendant Carlos M. Guerra resides at 3207 Fulton Street, Apartment 2, Brooklyn, New York. He is the principal of the Restaurant and had the capacity to supervise or control the activities there on the night of July 16, 2006. (See Compl. ¶¶ 6-8.) Plaintiff sent two independent auditors, Joseph Dennis and James Picicci, to the Restaurant during the broadcast of the Event. (Affidavit of Joseph Dennis, sworn to July 22, 2006 ("Dennis Aff."); Affidavit of James Picicci, sworn to July 22, 2006 ("Picicci Aff.").) At 11:50 p.m., Picicci observed two televisions showing the Event with approximately twenty patrons in the Restaurant. (Picicci Aff.) At 12:38 a.m., Dennis observed one television showing the Event, and only six patrons in the restaurant. (Dennis Aff.) Defendants had not contracted with plaintiff to receive or display the Event. (Plaintiff's Affadavit for Default ("Pl.'s Aff.") ¶ 6 (Apr. 21, 2006).) They were not otherwise authorized to display it. (Id. at ¶ 9.)[1] Plaintiff asserts that the only way the Event could have been shown in the Restaurant was if an owner or an agent committed a wrongful act to receive the satellite signal. (Pl.'s Aff. ¶ 11.)

Plaintiff seeks statutory damages of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II) (Pl.'s Mem. at 6)[2], $100,000 under § 605(e)(3)(C)(ii), and $60,000 under 47 U.S.C. §553 for

---

[1]The complaint does not expressly state that the defendants had not contracted with plaintiff or that they were not otherwise authorized to display the Event. Both inferences, however, can be drawn from the accusation that the defendants "unlawfully intercepted" the program. (Compl. ¶ 18.)

[2]In its complaint, the plaintiff mistakenly requests $110,000. (Compl. ¶ 38.)

-3-

willful misappropriation for personal or private financial gain. (Compl. ¶ 38(c-d).) Plaintiff clarified this request in its legal memorandum, stating that it elects to recover damages only under 47 U.S.C. § 605. (Pl.'s Mem. at 5.) Plaintiff also requests a permanent injunction against defendants because "[p]laintiff has no adequate remedy at law to redress the defendants' violations." (Compl. ¶¶ 37, 38(e).) Plaintiff also seeks attorney's fees and costs of $2,018.75 under § 605(e)(3)(B)(iii). (See Affidavit of Julie Cohen Lonstein, Esq., sworn to Apr. 18, 2006 ("Lonstein Aff.") at 4.)

**DISCUSSION**

A. Damages under the Communications Act

1. Statutory Damages

Plaintiff seeks damages under 47 U.S.C. § 605, which states, in relevant part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Satellite cable programming clearly falls under this law. See 47 U.S.C. § 605(d)(3).

Section 605 further states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i). As a result of the default, J & J Sports has been unable to ascertain the extent of the defendants' violations, though there is evidence of repeated poaching of pay-per-view boxing matches. (Pl.'s Mem. at 3-4.) Plaintiff has therefore

elected to recover statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), which allows for statutory damages for "each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."

The amount of damages assessed pursuant to § 605 rests within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993). Most courts faced with the unauthorized commercial receipt and broadcast of a cable program have assessed damages based on the number of patrons in the establishment at the time of transmission. See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159, at *11 (S.D.N.Y. June 30, 2004) (awarding $50 per patron against establishments for unauthorized display of pay-per-view boxing match); Googies Luncheonette, 77 F. Supp. 2d at 490 (same); New Contenders, Inc. v. Diaz Seafood Corp., No. 96 CIV. 4701, 1997 U.S. Dist. LEXIS 13132, at *8 (S.D.N.Y. Sept. 2, 1997) (awarding $300 per patron under § 605); Kingvision Pay-Per-View Corp. v. Prime Time Saloon, Inc., slip op., No. 95 CV 1422 (E.D.N.Y. Sept. 30, 1996) (awarding $50 per patron, plus $10 per patron to reflect a $10 cover charge). As one court has explained, the per-patron valuation "is based on a theory of rough justice" that the patrons viewing the event without access to the unauthorized showing "would have ordered it themselves [at a cost of approximately $50 each]." Googies Luncheonette, 77 F. Supp. 2d at 490. "Plaintiff is thus fully compensated for any loss it suffered," and by divesting the defendant of any profits, "it assures that [defendant] reap[s] no benefit from unlawful action." Id.

Plaintiff states that the amount a residence would have paid for the fight was $54.95. (Pl.'s Aff. at ¶ 11(B)). Numerous decisions in this district have awarded damages based

on the residential fee multiplied by the number of patrons in the establishment. See, e.g., Garden City Boxing Club, Inc. v. Rosado, No. CV 05-1037, 2005 U.S. Dist. LEXIS 27108, at *9 (E.D.N.Y. Oct. 6, 2005) (recommending statutory damage award of $989.10, representing $54.95 for each of the 18 patrons that the investigator observed in the establishment during the DeLaHoya/Hopkins event); Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 U.S. Dist. LEXIS 23115, at *8 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damage award of $2,198, representing $54.95 for each of the 40 patrons who could have viewed the DeLaHoya/Hopkins event based on the establishment's capacity);[3] Garden City Boxing Club v. Morales, No. CV-05-0064, 2005 U.S. Dist. LEXIS 22989, at *16 (Aug. 18, 2005) (recommending statutory damage award of $3,297, representing $54.95 for each of the 60 patrons who witnessed the event). This calculation is based on the assumption that each patron would have paid to view the fight from home had he or she not had access to a free broadcast at a neighborhood establishment. See Bello, 2005 U.S. Dist. LEXIS 23115, at *8.

I find the per-patron valuation appropriate here. According to the report of the earlier investigator, there were approximately twenty patrons present during the broadcast of the Event. (Picicci Aff.) The second investigator, however, saw only six patrons still present for the

---

[3] In using the establishment's capacity, rather than the number of patrons the investigator observed, Judge Azrack explained that it was "entirely possible that at some point in the evening the restaurant did indeed hold that maximum number, if not more, as it is debatable whether an establishment that deigns to display illegally pilfered boxing matches to attract additional customers would turn away those very same customers when the facility reached its maximum capacity." Bello, 2005 U.S. Dist. LEXIS 23115, at *8. I find this analysis somewhat speculative and prefer to hold the plaintiff responsible for supporting its request with evidence concerning the actual number of patrons who viewed the Event. Moreover, plaintiff has not provided the actual capacity of the Restaurant, but only inconsistent estimates made by individuals there for less than ten minutes each. (See Dennis and Picicci Affidavits.)

last round of the Event. (Dennis Aff.) The court concludes that not all those Picicci counted were there to watch the fight. The court generously estimates that fifteen patrons were there to watch the fight. Fifteen multiplied by $54.95 leads to an award of $824.25. I therefore recommend that plaintiff be awarded $1,000, the minimum allowed under 47 U.S.C. § 605, in statutory damages.

2. Enhanced Damages

Plaintiff also seeks an increased award pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, . . . by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Willfulness is defined as "disregard for the governing statute and an indifference for its requirements" (Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)), and is established by the fact that an event is broadcast without authorization. See Googies Luncheonette, 77 F. Supp. 2d at 490 ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Courts use a variety of factors in determining whether a defendant's willful conduct justifies enhanced damages. These factors include (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) advertising the broadcast; and (4) charging an admission fee or charging premiums for food and drinks. Kingvision Pay-Per-View Ltd. v. El Rey Del Bistec y Caridad, Inc., No. 01-CV-6562, 2001 U.S. Dist. LEXIS 20531, at *6-7 (S.D.N.Y. Dec. 12, 2001).

In this case, the Restaurant never contracted for the right to broadcast the Event and, accordingly, was not authorized to intercept, receive or transmit communication of the Event. (See Compl. ¶ 18.) In order to have received the Event, someone connected with the Establishment had to have engaged in some deliberate act. (See id.) Indeed, since the transmission of the Event was electronically coded and the Establishment was not authorized to receive the transmission, an owner or operator must have used an illegal decoding device or some other unlawful means. (Id. ¶ 19.) Therefore, the conduct was willful. In addition, the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct. See Fallaci v. The New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983). Plaintiff also offers evidence that this Restaurant has engaged in three other pay-per-view theft violations. (See Pl.'s Mem. at 3-4; Lonstein Aff., Exs. B, C, D.)

Plaintiff does not allege that the defendants advertised the display of the Event in order to entice customers into the Restaurant or charged a cover fee from which it could earn a profit. The court notes, however, that in the photographs of the Restaurant included with the affidavits of event-day investigators, the awning of the restaurant advertises "Eventos Deportivos en Pantalla Gigante" (Sports Events on a Big-Screen). (Dennis Aff.; Picicci Aff.) Not mentioning this was certainly an oversight of the investigators and the plaintiff. Additionally, the event-day investigators are inconsistent as to the number of televisions. (Compare Picicci Aff. (two televisions) with Dennis Aff. (one television).)

In light of the circumstances surrounding the display, I respectfully recommend that an additional award of $4,000 in enhanced damages, *i.e.*, a factor of four times the per-

patron amount, be assessed against defendants for willful violation of the Communications Act. A factor of four seems appropriate given the repeat offences and the advertising. See Kingvision Pay-Per-View Ltd. v. Olivares, No. 02 Civ. 6588, 2004 U.S. Dist. LEXIS 6261, at *11 (S.D.N.Y. Apr. 5, 2004) ("Generally, it is reasonable to increase an actual or statutory damages award by a specific percentage to penalize a defendant for willful acts"); Googies Luncheonette, 77 F. Supp. at 491 (imposing additional damage award of $3,000, three times the base award, against defendant with no record of any other theft of cable services or other intellectual property, to "serve as a reasonable deterrent against future violations"); see also Time Warner Cable v. Taco Rapido Restaurant, 988 F. Supp. 107, 112 (imposing enhanced damages award of $5,000 where defendant displayed boxing match to approximately seventy-five patrons on one television set); Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (increase of five times the base award for willful acts).

The complaint names both Guerra and the Restaurant as defendants. I recommend that plaintiff's award be limited to a single recovery of $5,000 ($1,000 compensatory plus $4,000 enhanced). In other words, the defendants should be held jointly and severally liable for a single award of $5,000 in statutory damages. See Entertainment by J&J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 U.S. Dist. LEXIS 13686, at *12 (E.D.N.Y. May 21, 2002).

       3. Permanent Injunction

Plaintiff also requests a permanent injunction to enjoin defendants from violating § 605. (Compl. ¶¶ 37, 38(e).) Plaintiff does not address the request for an injunction in its memorandum of law and does not give compelling reasons to grant an injunction in the

complaint, saying only that "[p]laintiff has no adequate remedy at law to address the defendants' violations." (Id. ¶ 38.) A court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Main Events/Monitor Prods. v. Batista, No. CV-96-5089, 1998 U.S. Dist. LEXIS 16260, at *3 (E.D.N.Y. Aug. 26, 1998). Injunctions are available remedies pursuant to § 605(e)(3)(B)(i). In addition, "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc v. Westover., 359 U.S. 500, 506-07 (1959). Plaintiff has shown only that there was more than one violation of § 605, not that there was irreparable harm. A legal remedy is sufficient to deter defendants from further violations. I therefore decline to recommend that an injunction be granted.

    4. Attorney's Fees and Costs

As the prevailing party, plaintiff is also entitled to an award of reasonable attorney's fees and costs in this action. 47 U.S.C. § 605(e)(3)(B)(iii). An award of full costs, including reasonable attorney's fees, to the prevailing party is mandated for a violation of § 605. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993); Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 329 (E.D.N.Y. 1996). A useful starting point for determining attorney's fees is multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

    In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying "relevant dates, time spent and work done." Broadcast

Music, 919 F. Supp. at 661 (citing Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)). In the present case, attorney Julie Cohen Lonstein has submitted an affidavit stating that she and her firm, Lonstein Law Office, P.C., expended a total of seven hours (four-and-three-quarters attorney hours and two-and-a-quarter paralegal hours) during the pendency of this action. (See Lonstein Aff.) She has not submitted documentation to authenticate the number of hours spent, but her affidavit summarizes the work done and the hours expended. Courts recognize that "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy [this requirement] and suffice to permit recovery of attorneys' fees," as do "typewritten transcriptions of the original handwritten time sheets filled out by attorneys. . . ." David v. Sullivan, 777 F. Supp. 212, 223 (E.D.N.Y. 1991); see also Cruz, 34 F.3d at 1160 (typed summaries of hours drawn from contemporaneous time records, without submission of actual time records, was sufficient to support attorney's fees application). Plaintiff's submissions are unremarkable, boilerplate forms containing careless errors (adding an extra plaintiff, for example). The amount of time Ms. Lonstien claims to have spent, while not large, is too great for what amounts to cutting and pasting names and writing a few case-specific paragraphs. Therefore, I respectfully recommend that counsel be compensated for three-and-a-half attorney hours and two-and-a-quarter paralegal hours.

The hourly rates plaintiff requests – $200 per hour for Ms. Lonstein and $75 per hour for a paralegal – seem reasonable and in line with the rates charged for comparable work in this area. See, e.g., Rosado, 2005 U.S. Dist. LEXIS 27108, at *16 (awarding same hourly rates

to this counsel). I therefore recommend that plaintiff be awarded attorney's fees of $868.75 ($700 plus $168.75).

Plaintiff also seeks reimbursement for costs in the amount of $900, which includes $250 for filing fees, $200 for service of process, and $450 for investigation fees. (Lonstein Aff. ¶ 3.) The costs for filing fees and service of process are reasonable. As for the investigator's fee, courts are divided as to whether that cost is recoverable. Compare Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839, 2004 U.S. Dist. LEXIS 12347, at *12 (S.D.N.Y. June 30, 2004) (denying request for recovery of investigator's fees and stating that "[t]here is no provision for a prevailing party to be awarded the cost of its investigator."); Joe Hand Promotions, Inc. v. Soto, No. 01 Civ. 0329, 2003 U.S. Dist. LEXIS 22560, at *9 (S.D.N.Y. Dec. 17, 2003) ("there is no authority to award 'investigative fees' as costs"); Time Warner Cable of New York City v. Sanchez, No. 02 Civ. 5855, 2003 U.S. Dist. LEXIS 12954, at *14-15 (S.D.N.Y. July 8, 2003) ("There is no provision . . . for a prevailing party to be awarded the cost of its investigator."), with Kingvision v. Tardes Calenas, slip op., 04-CV-3624 (E.D.N.Y. Aug. 22, 2005) (recommending that plaintiff be awarded expenses incurred for an investigator because the investigation was "incidental and necessary" to the prosecution of the case); Garden City Boxing Club, Inc. v. Guzman, No. 03 Civ. 8776, 2005 U.S. Dist. LEXIS 7954, at *10 (S.D.N.Y. Apr. 26, 2005) (awarding investigator's fee as part of costs without discussion); Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583, 2003 U.S. Dist. LEXIS, at *16 (S.D.N.Y. June 11, 2003) (same). See also Bello, 2005 U.S. Dist. LEXIS 23115, at *17 (acknowledging that there is no statute or federal rule allowing the recovery of investigator costs, but awarding $100 of the $450 requested because the plaintiff "did provide an affidavit and invoice detailing the

amount of time spent on the investigation and the rate."). Because there is no legal basis for an award of such fees as an element of costs, I decline to recommend an award for the investigator's fee.

Based on the foregoing, I recommend that Kingvision be awarded $450 in costs, representing the filing fee and the cost for service of process for Guerra and the Restaurant.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff be awarded $5,000 in damages and $1,318.75 in attorney's fees and costs. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Sifton and to my chambers, within ten (10) business days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
July 6, 2006